IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEFFREY A. PATE,

    Plaintiff,

    vs.

SACRAMENTO COUNTY
SHERIFF DEPUTIES, et al.,

    Defendants.

No. CIV S-04-1201 FCD DAD P

ORDER AND

FINDINGS AND RECOMMENDATIONS

/

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Before the court is defendant Garcia's motion for summary judgment, summary adjudication or, in the alternative, motion to dismiss for failure to exhaust administrative remedies.

**SECOND AMENDED COMPLAINT**

The events at issue in this action occurred at the Sacramento County Main Jail. In the operative complaint before the court plaintiff alleges as follows. On March 20, 2003, defendant Deputy Garcia placed plaintiff in a segregated housing "pod" that housed inmates who were northern Hispanic gang members and affiliates. (Second Am. Comp. (Compl.), Attach. at 1.) Shortly thereafter, plaintiff was approached by inmate gang affiliates causing him to fear for

his safety. (Id.) He pressed the emergency call button and informed the control booth officers about his safety concerns. (Id.) Plaintiff was then moved to a second pod that housed southern Hispanic gang affiliates. (Id.) On August 15, 2003, without any provocation, plaintiff was attacked and seriously injured by two inmates while retrieving a basketball from an outdoor recreation area. (Id.) Plaintiff alleges that defendant Garcia was deliberately indifferent to plaintiff's safety when he housed plaintiff with gang affiliates. (Id. at 3.)

In the caption of the original form complaint filed by plaintiff, he named as defendants in this action the following: "Sacramento Sheriff Deputy et al," "Sacramento Jail Medical (Physician)," and Deputy Garcia. (Compl. at 3.)[1] The court informed plaintiff that service would not be ordered on defendants identified in the complaint merely as "Physicians - Medical Staff - Sacramento Main Jail 651 - 'I' Street." (Id. at 4.) The court explained to plaintiff that he had not sufficiently identified such persons for purposes of effecting service. (Id.) Plaintiff did not file objections or request reconsideration of this order, and thus only defendant Garcia was served with process.

In the court's orders filed July 22, 2004 and October 28, 2004, plaintiff was provided the applicable legal standards for stating a cognizable Eighth Amendment claim alleging inadequate medical care in light of his references to the physicians and medical staff at the jail. Plaintiff was provided two opportunities to amend his complaint in order to state cognizable claims. Finally, in an order filed August 15, 2005, plaintiff was advised that he had failed to state a cognizable Eighth Amendment medical care claim. (Order filed 8/15/05, at 1-2.)

Therefore, this action is proceeding only on plaintiff's claim that defendant Garcia failed to adequately protect him in violation of the Eighth Amendment.

/////

/////

---

[1] The first page of plaintiff's original form complaint is numbered as page 3.

**SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

1 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
2 of the suit under the governing law, see <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248
3 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir.
4 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
5 return a verdict for the nonmoving party, see <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433,
6 1436 (9th Cir. 1987).

7       In the endeavor to establish the existence of a factual dispute, the opposing party
8 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
9 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
10 versions of the truth at trial."  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose of summary
11 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
12 genuine need for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
13 committee's note on 1963 amendments).

14       "A scintilla of evidence or evidence that is merely colorable or not significantly
15 probative does not present a genuine issue of material fact" precluding summary judgment.
16 <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).  <u>See</u> also <u>Summers v. A.</u>
17 <u>Teichert & Son, Inc.</u>, 127 F.3d 1150, 1152 (9th Cir. 1997).  On summary judgment the court is
18 not to weigh the evidence or determine the truth of the matters asserted but must only determine
19 whether there is a genuine issue of material fact that must be resolved by trial.  <u>See</u> <u>Summers</u>,
20 127 F.3d at 1152.  Nonetheless, in order for any factual dispute to be genuine, there must be
21 enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's
22 summary judgment motion.  <u>See</u> <u>Addisu</u>, 198 F.3d at 1134.

23       In resolving the summary judgment motion, the court examines the pleadings,
24 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
25 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  <u>See</u> <u>Anderson</u>,
26 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

On November 16, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

## PARTIES' ARGUMENTS

Defendant Garcia advances two arguments in support of his motion.  First, he contends that he was not involved in any way in plaintiff's housing assignments and, in any event, the evidence before the court establishes that plaintiff did not suspect he would be attacked after he was transferred to the second pod and did not report any concern for his safety in that second pod to any jail officials.  Second, defendant Garcia asserts that prior to filing suit plaintiff failed to exhaust his administrative remedies with respect to the claim he now presents.

As to the first argument, defendant Garcia argues that plaintiff was housed in two different pods. (Mot. for Summ. J. (MSJ), Mem. P. & A. (P&A), at 4.)  Plaintiff was removed from the first pod and placed in a second pod after he reported his safety concerns to jail officials. (Id.)  According to the defense, plaintiff did not report any further concerns about his safety to any jail official following his transfer to the second housing pod and before he was attacked by other inmates. (Id.)  Defendant Garcia has submitted his own declaration in which he states that the classification unit at the Sacramento County Main Jail determines where inmates

1   are to be housed based on various factors, such as gang affiliation, medical conditions, or known
2   enemies. (Id., Garcia Decl. at 2.) Defendant Garcia declares that he did not work in the
3   classification unit but rather was assigned to 8 East on the eighth floor of the jail to receive newly
4   booked inmates and ensure that they were sent out to court on time, to their permanent housing
5   units as assigned by the classification unit or were timely released from custody. (Id.) Defendant
6   Garcia states that given his assignment, he had no authority "to reassign Jeffrey A. Pate, or any
7   inmate, from one floor or pod to another." (Id.) In addition, defendant Garcia points to
8   plaintiff's own deposition testimony where plaintiff confirmed that he did not report to jail
9   officials any safety concerns about the second pod to which he had been transferred and stated
10  that the attack by other inmates came as a "surprise" to him. (Id., P&A, at 6; Dep. at 28.)
11  Defendant Garcia argues that because plaintiff cannot show that he was personally involved in
12  the actions that resulted in the alleged constitutional violation, summary judgment should be
13  granted in his favor on plaintiff's failure to protect claim.

14          Defendant Garcia next argues that plaintiff never submitted a grievance to the Jail
15  Housing Unit Officer or a formal written grievance to the Jail Housing Unit Deputy and therefore
16  failed to exhaust his administrative remedies. (Id. P&A at 8.) Defendant Garcia contends that
17  his argument in this regard is supported by plaintiff's own deposition testimony at which time
18  plaintiff conceded that he never asked to be moved after he was assigned to the second pod. (Id.
19  P&A at 8-9; Dep. at 37-38.)

20          In his opposition to defendant Garcia's motion plaintiff contends that it was
21  indicated on his jail wristband that he is Native American and that by placing him in a pod with
22  Hispanic gang affiliates jail deputies, including defendant Garcia, demonstrated their deliberate
23  /////
24  /////
25  /////
26  /////

indifference to his safety. (Opp'n at 2.)[2] In support of his opposition plaintiff has submitted his own affidavit, medical records and deposition transcript. Of particular note is plaintiff's deposition at which he testified about both his interaction with defendant Garcia and the subsequent attack upon him as follows:

> Q [Defendant's Counsel]. So in your complaint it said that Deputy Garcia housed you in a segregation pod; is that right?
>
> A [Plaintiff]. Now, Deputy Garcia, he ran the - - when you first come into the jail, there's a - - there's - - I don't know what it's called, but it's when you first go in the jail, it's at the top floor. And it's called - - I don't know. Some kind of - - it's where they decide where you're going to be doing your time at, what floor. And so they called about 40 of us out. And I remember everybody went to different floors but me. And he said - - he was making jokes. He said he had a place for me.
>   And as he's walking me across over to the other side, he says to me we are going to see how long you can last up here. And then - -
>
> Q. Is - -
>
> A. Now, I don't know what he means. And then until after I'm - - they put me in there. And I find out I'm in danger, you know, but I don't think that Mr. Garcia - - I don't know if he knew what kind of condition I was in.
>
> Q. Now, when you said he said we'll see how long you can last in here, are you referring to Deputy Garcia, or is that - -
>
> A. That's correct.
>
> Q. So, Deputy Garcia is the one that housed you in this - -
>
> A. He made that comment to me. He said we're going to see how long you can last up here. He made that comment to me. Now, he was the one I think that housed everybody to, you know different parts of the jail.

/////

---

[2] Plaintiff also argues that he was not properly served with defendant's motion and that the motion should be denied on that basis. Plaintiff's objection has been noted by the court. However, counsel for defendant Garcia re-served plaintiff with the motion and filed the amended proof of service on January 29, 2008. Moreover, the court has deemed plaintiff's January 25, 2008 opposition to the motion, as having been timely filed. In light of these circumstances the court will address the motion on the merits.

| | |
|---|---|
| 1 | * * * |
| 2 | Q. So Deputy Garcia placed you in the first segregation pod? |
| 3 | A. I don't know what kind of pod. I don't know what it was. All I know is he put me over there in danger, and I was in danger. |
| 4 | |
| 5 | Q. Were you in danger because of the other people there? |
| 6 | A. Yes. I was in direct danger. |
| 7 | Q. Okay. And then in your complaint it talks about an emergency call button. Do you recall that? |
| 8 | A. There's an emergency call button. |
| 9 | Q. Saying that your security was in jeopardy and you were removed from the area. Is that correct? |
| 10 | |
| 11 | A. Yeah. That was - - that was when, you know, I come out of the pod. You only get out one hour a day. I remember. And they - - I was going to try to call my girlfriend, and - - but I was surrounded. And they surrounded me, and they were going to jump me. And I was in danger, and . . . |
| 12 | |
| 13 | |
| 14 | Q. Now, you're talking about other inmates surrounded you? |
| 15 | A. Yes. |
| 16 | Q. This was when you very first got to the jail? |
| 17 | A. I don't know how long I'd been there, but, you know, I remember that - - you made me remember things. Yes, I told them that I'm in danger. |
| 18 | |
| 19 | Q. And then they moved you to another pod? |
| 20 | A. Yes, they did. |
| 21 | Q. Who moved you to the other pod? |
| 22 | A. I don't know who it was. |
| 23 | Q. Not Deputy Garcia, though? |
| 24 | A. I don't know who it was. |
| 25 | Q. No, not Deputy Garcia, or you don't know at all? |
| 26 | A. I don't know who it was. |

1      Q. At all?

2      A. I don't know who it was. All I know is that - - is that I was moved, and I didn't know it, but I was put in danger again.

3

4      Q. When you say you're put in danger, can you just explain how you knew you were in danger?

5      A. Well, I didn't know it. I didn't know it. I didn't know anything. All I know is I go to the rec yard and - - and I tried to go

6      get a - - I don't know. I tried to go get a basketball - -

7                                * * *

8      A. Okay. Okay. Now I'm trying to explain to you the danger I was in when they moved me. That's my point of - -

9      Q. Okay.

10

11      A. - - bringing that up.
        Okay. Now, then the other guy that attacked me, the other guy - - there was two big guys in the pod. And the other guy had - - I

12      guess he just got - - he got sentenced to over 200 years. And - -

13      Q. Had you had problems with either one of them before?

14      A. No.

15      Q. Did you ever report any concerns about them to anyone before you were attacked?

16

17      A. No.

     Q. So when you were attacked, it was kind of a surprise to you?

18

19      A. I - - it was a surprise. . . .

20 (Depo. Transcript, filed Dec. 4, 2007 at 13-17; 28.)

21         Plaintiff also argues that consideration of defendant Garcia's motion for summary

22 judgment should be postponed until further discovery is conducted. (Opp'n at 5.) The court

23 construes plaintiff's argument in this regard as a motion brought pursuant to Rule 56(f) of the

24 Federal Rules of Civil Procedure . Subsequently, on March 4, 2008, plaintiff filed a motion

25 requesting that defendant Garcia and the Sacramento County Sheriff's Department be ordered to

26 produce documents, including copies of plaintiff's booking and arrest report, plaintiff's prior

arrest records and classifications, plaintiff's jail records, jail "practice and procedure for the segregation of known gang members and non-affiliated general population prisoners[,]" plaintiff's medical and mental health records, and the incident report on the events of March 20, 2003. (Pl.'s Mot. for Prod. of Docs., at 1-3.)

Defendant Garcia opposes plaintiff's motion for further discovery. (Def.'s Opp'n to Disc. Mot., filed Mar. 10, 2008.) Defendant Garcia contends that pursuant to the court's scheduling order in this case, discovery closed on February 29, 2008 and that plaintiff has not shown good cause to modify that scheduling order nor has he demonstrated his diligence in conducting discovery. (Id. at 2.) Finally, defendant Garcia argues that plaintiff has not submitted the required affidavit setting forth the particular evidence he expects to obtain from the requested further discovery that would preclude the granting of defendant's motion for summary judgment. (Id. at 3.)

## ANALYSIS

The issue before the court is whether defendant Garcia, the sole defendant in this action, was involved in plaintiff's placement in the housing pod where plaintiff was attacked by other inmates. Defendant Garcia has submitted his own affidavit and referred to portions of plaintiff's deposition to support his argument that the evidence before the court demonstrates that he was not personally involved in plaintiff's housing placement and that plaintiff himself is uncertain about who made the decision to house him in the second pod where he was attacked. In short, defendant Garcia contend that the evidence before this court establishes that he did not cause any deprivation of plaintiff's rights because he did not engage in the acts about which plaintiff complains.

As noted above, summary judgment should be granted when the party who has the burden of proof at trial fails to show the existence of an essential element of his claim. Celotex Corp., 477 U.S. at 322. Although not often discussed, causation is an implicit requirement for any § 1983 action in that "[l]iability under § 1983 can be established by showing that the

defendant personally participated in a deprivation of the plaintiff's rights, or caused such a deprivation to occur." Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981). See also Harper v. City of Los Angeles, ___ F.3d___, 2008 WL 2718874 (9th Cir. July 14, 2008) ("In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury.") A causal connection must be established either by some kind of direct personal participation or by setting in motion a series of acts which the actor knows or reasonably should know would cause others to inflict a constitutional injury. Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978); see also Harper, 2008 WL 2718874 ("To meet this causation requirement the plaintiff must establish both causation-in-fact and proximate causation."); Phillips v. Hust, 477 F.3d 1070, 1077 (9th Cir. 2007) ("[A]s in any § 1983 case, Phillips must show that the alleged violation of his rights was proximately caused by Hust, the state actor.")

Moreover, the Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Here, the evidence before the court establishes that defendant Garcia was not involved in the alleged violation of plaintiff's constitutional rights. It appears that plaintiff named defendant Garcia in this action because of his allegedly unprofessional and callous

remarks made to plaintiff at the time plaintiff was assigned to his first housing pod. However, it is undisputed that after plaintiff expressed safety concerns about this initial housing assignment, he was moved to a different pod by jail officials. Unfortunately, after his move, plaintiff was attacked by other inmates without provocation or warning. Plaintiff testified at his deposition that this attack was unexpected and a surprise. Such circumstances also do not demonstrate deliberate indifference on the part of defendant Garcia about plaintiff's safety. See Farmer, 511 U.S. at 837 (holding that deliberate indifference requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). In response to the evidence submitted by defendant Garcia, plaintiff has simply failed to present any evidence of a causal connection between defendant Garcia and the claimed constitutional violation. Plaintiff has failed to present evidence establishing either a causal link between defendant Garcia and the alleged constitutional violation or defendant Garcia's deliberate indifference to a serious risk of harm, both essential elements of plaintiff's claim. Accordingly, defendant Garcia is entitled to summary judgment in his favor.

The court will also deny plaintiff's Rule 56(f) motion and his subsequent and untimely motion for production of documents filed after the close of discovery in this case. In this regard, plaintiff has not shown that any of the discovery which he belatedly seeks would produce evidence that would preclude the granting of summary judgment in defendant Garcia's favor.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's Rule 56(f) motion submitted with his January 25, 2008 opposition to defendant Garcia's motion for summary judgment (Doc. No. 67), is denied; and

2. Plaintiff's March 4, 2008 motion requesting the production of documents (Doc. No. 71), is denied.

/////

Also, IT IS HEREBY RECOMMENDED that:

1. Defendant Garcia's November 29, 2007 motion for summary judgment (Doc. No. 64) be granted; and

2. This action be dismissed

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within five days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 25, 2008.

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
pate1201.msj